UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLIFFORD M. HANSEN,<br><br>            Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>            Defendant. | Case No. 4:20-CV-00326-DKG<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION TO DISMISS (DKT 40)** |

## INTRODUCTION

Before the Court is Defendant's Motion to Dismiss the Second Amended Complaint. (Dkt. 40). The motion is fully briefed and ripe for the Court's consideration. (Dkt. 43, 44). On April 4, 2024, the Court held oral argument and took the motion under advisement. (Dkt. 46). On April 5, 2024, Plaintiff filed a Supplement addressing an issue raised during the hearing. (Dkt. 47). For the reasons that follow, the Court will grant in part and deny in part Defendant's Motion to Dismiss.[1]

---

[1] The parties have consented to proceed before a United States Magistrate Judge in this matter pursuant to 28 U.S.C. § 636(c)(1) and Local Civil Rule 72.1(a)(1). (Dkt. 7).

## BACKGROUND

In this action, Plaintiff seeks to adjudicate his claims of permanent easements, rights-of-way, and rights of access to certain diversions and ditches on Cleveland Creek and Niece Creek, also known as Grover Gulch, which are located in Custer County, Idaho. (Dkt. 37). The diversions – referred to as CLC1, GRG1, GRG2 – and some or all of the ditches from these diversions are located on land owned by the United States. The federal land is administered by the United States Forest Service (USFS).

The case was stayed for some time at the request of the parties to allow for investigation of the records, settlement discussions, and to await the Supreme Court's decision in *Wilkins v. United States*. On April 3, 2023, the stay was lifted. (Dkt. 36). Plaintiff filed a Second Amended Complaint on April 17, 2023, which is the current operative pleading. (Dkt. 37).

The Second Amended Complaint raises three claims for relief under the Quiet Title Act (QTA), 28 U.S.C. § 2409a, asserting Plaintiff has rights to convey water and to access, maintain, and utilize the CLC1, GRG1, and GRG2 diversions and related ditches or other conduits pursuant to: 1) the Homestead Act of 1862, 43 U.S.C. § 161 *et seq*. (repealed 1976), (Claim One); 2) the 1891 Ditch Act, 43 U.S.C. §§ 946-949, (1891 Act) (Claim Two); and 3) the Mining Act of 1866, 43 U.S.C. § 661 (1866 Act), and Revised Statute Section 2339 (RS 2339), collectively referred to herein as "the 1866 Act/RS 2339" (Claim Three). (Dkt. 37). On May 19, 2023, Defendant filed the Motion to Dismiss presently before the Court seeking to dismiss the Second Amended Complaint

for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for

failure to state a claim under Rule 12(b)(6). (Dkt. 40). The Court finds as follows.

<strong>LEGAL STANDARD</strong>

### 1. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction, possessing only those powers

granted by the Constitution and statutes enacted by Congress. *United States v. Marks*, 530

F.3d 799, 810 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994)). Thus, a federal court cannot consider claims for which it lacks

subject matter jurisdiction. A party may move to dismiss for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Additionally, a court may

raise the question of subject matter jurisdiction *sua sponte* at any time during an action.

*United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003). Regardless of who

raises the issue, "when a federal court concludes that it lacks subject matter jurisdiction,

the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S.

500, 514 (2006) (citing 16 J. Moore et al., *Moore's Federal Practice* § 106.66[1], pp.

106-88 to 106-89 (3d ed. 2005)); Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227

F.3d 1214, 1242 (9th Cir. 2000). Here, Defendant's motion presents facial challenge.

(Dkt. 40 at 9).[2] In a facial attack, the challenging party "asserts that the allegations

---

[2] During the hearing, Defendant represented that its Rule 12(b)(1) motion is a facial challenge, but argued materials from outside the complaint could be considered as they are expressly referenced in the pleading. Defendant's briefing, however, plainly sets forth the standard for a factual challenge and cites cases applying that standard. (Dkt. 40 at 9). Reconciling these inconsistent

contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

The party asserting federal jurisdiction bears the burden of proving subject matter exists. *Kokkonen*, 511 U.S. at 377; *Dunn & Black P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007) (The party asserting a claim against the United States bears "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress."). If the nonmoving party fails to meet its burden and the Court determines that it lacks subject matter jurisdiction, the Court must dismiss the action. Fed. R. Civ. P. 12(h)(3). "[I]n general, dismissal for lack of subject matter jurisdiction should be without prejudice." *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 n. 2 (9th Cir. 2019). However, where the bar of sovereign immunity is

---

positions, the Court will analyze the motion as a facial challenge to subject matter jurisdiction based on Defendant's representation and because no extrinsic materials have been submitted relevant to the Rule 12(b)(1) motion. This distinction is not inconsequential, as the Court must apply different standards for facial and factual challenges to subject matter jurisdiction. *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1997) (emphasizing a "crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and…that attack the existence of subject matter jurisdiction in fact…."); *Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (In a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

absolute and cannot be cured, dismissal may be with prejudice. *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

### 2. Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). If the facts pled are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 682 (2009) (cleaned up).

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Id.* at 678. A court is not, however, "required to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal of a complaint without leave to amend is inappropriate, however, unless it is clear that the complaint could not be saved by an amendment. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (noting that leave to amend should be granted "unless [the court] determines that the pleading[s] could not possibly be cured by the allegation of other facts").

## DISCUSSION

### 1. Motion to Dismiss Rule 12(b)(1) - Waiver of Sovereign Immunity

An action can be brought against the United States only where the federal government waives its sovereign immunity. *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996). Absent a clear waiver of sovereign immunity, the Court is without subject matter jurisdiction. *Block v. N. Dakota ex rel. Bd. of Univ. and Sch. Lands*, 461 U.S. 273, 280 (1993).

The QTA provides a limited waiver of sovereign immunity in a civil action to adjudicate a disputed title to real property in which the United States claims an interest. 28 U.S.C. § 2409a(a) ("The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest…."); 28 U.S.C. § 1346(f) (providing that district courts "shall have original jurisdiction of civil actions under section 2409a to quiet title to an estate or interest in real property in which an interest is claimed by the United States"). Indeed, the QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property," *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994)

(quoting *Block*, 461 U.S. at 286), and "applies to claims against the United States for rights of access, easements, and rights-of-way, as well as those involving fee simple interests" *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014). The QTA requires that the complaint "set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the circumstances under which it was acquired, and the right, title, or interest claimed by the United States." 28 U.S.C. § 2409a(d); *see Leisnoi, Inc. v. United States* (*Leisnoi I*), 170 F.3d 1188, 1191 (9th Cir. 1999) (recognizing §§ 2409a(a) & (d) impose conditions upon the waiver of sovereign immunity). The "particularity" requirement in section 2409a(d) "necessitates a great deal of specificity." *McMaster v. United States*, 731 F.3d 881, 897-898 (9th Cir. 2013).

"[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the [QTA]: 1) the United States must claim an interest in the property at issue, and 2) there must be a disputed title to real property between the interests of the plaintiff and the United States." *Leisnoi, Inc. v. United States* (*Leisnoi II*), 267 F.3d 1019, 1023 (9th Cir. 2001) (discussing *Leisnoi I*, 170 F.3d at 1191). "If either condition is absent, the [QTA waiver of sovereign immunity]…does not apply and the district court lacks jurisdiction to entertain the action." *Leisnoi I*, 170 F.3d at 1191.

On this motion, the first condition is uncontested, as the rights-of-way claimed by Plaintiff are located on land owned by the United States. Instead, Defendant challenges the second condition, arguing no disputed title has been shown to exist. (Dkt. 40).

For title to be disputed under the QTA, the United States must have "adopted a position in conflict with a third party regarding that title." *Mills*, 742 F.3d at 405. "[T]o

satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." *Kane Cnty., Utah v. United States*, 772 F.3d 1205, 1212 (10th Cir. 2014); *see also Mills*, 742 F.3d at 405. While the QTA does not require the United States to place gates or signs restricting access, or to physically remove individuals from traveling along before a disputed title is found, there must be "more than notice of a mere possibility, in the future, [that] a right-of-way may be limited or access denied." *N. Dakota ex rel. Stenehjem v. United States*, 257 F.Supp.3d 1039, 1074 (D. N.D. 2017). "[A]ctions of the United States that merely produce some ambiguity regarding a plaintiff's title are insufficient to constitute 'disputed title." *Kane Cnty.*, 772 F.3d at 1212-14. "In construing the scope of the QTA's waiver [of sovereign immunity], [courts] have read narrowly the requirement that the title at issue be 'disputed.'" *Mills*, 742 F.3d at 405.

Here, Plaintiff is the current owner of real property irrigated by the diversions and ditches located on federal land, which are at issue in this litigation. Plaintiff claims he possesses established pre-FLPMA[3] property rights to the diversions and ditches under the Homestead Act, the 1891 Act, and the 1866 Act/RS 2339. (Dkt. 37).[4] Plaintiff argues

---

[3] Plaintiff uses the term "pre-FLPMA" in the Complaint and briefing when referring to federal land statutes that pre-dated the Federal Land Policy Management Act of 1976, 43 U.S.C. § 1701 *et seq*. (FLPMA). (Dkt. 37, 43). FLPMA repealed the Homestead Act, and the rights-of-way provisions of the 1866 Act, and the 1891 Act, but preserved rights-of-way that were established under those statutes prior to FLPMA's passage. *Baker Ranches, Inc. v. Zinke*, 625 F.Supp.3d 1080, 1092 n. 2 (D. Nevada 2022); 43 U.S.C. § 1769. Plaintiff claims his rights to the diversions and ditches pre-existed FLPMA.

[4] Plaintiff also argues the USFS' failure to file a disclaimer and failure to acknowledge the source of title claimed by Plaintiff further demonstrate the existence of a disputed title. (Dkt. 43 at 5-6). However, Plaintiff has not identified any authority showing the USFS is required to take a

there is a dispute of title over his pre-FLPMA rights-of-way based on the USFS'

initiation of Endangered Species Act (ESA) consultation in relation to another litigation

filed in 2018 by the Idaho Conservation League (ICL). (Dkt. 37 ¶¶ 11-21, 25). In support

of this assertion, the Second Amended Complaint relies expressly and extensively on

materials related to and filed in the ICL litigation. (Dkt. 37 ¶¶ 11-29).[5]

The ICL litigation challenged the USFS' failure to complete ESA consultation

relevant to pending applications for Ditch Bill Easements (DBE) and Special Use Permits

(SUP) for twenty named diversions, including CLC1, GRG1, and GRG2, that were filed

---

position – either disclaiming or acknowledging – an assertion of title. Plaintiff's argument seeks to create a disputed title based on the USFS' failure to take a position concerning his claims of title, when the United States has no obligation to do so. *Compare* 28 U.S.C. § 2409a(a) and (e) (subsection (a)'s requirements for conferring QTA jurisdiction are distinct from subsection (e)'s provision ceasing the jurisdiction of the district court upon the filing of a disclaimer of interest). The argument has been rejected by the Ninth Circuit, which held that no disputed title exists where the United States has not taken a position concerning title. *Alaska v. United States*, 201 F.3d 1154, 1164-65 (9th Cir. 2000) ("A title cannot be said to be 'disputed' by the United States if it has never disputed it."). Plaintiff's attempt to distinguish the *Alaska* decision circles back to his argument that the USFS has taken a position in this case – that it has discretionary control over Plaintiff's rights-of-way. (Dkt. 43 at 6). The Court addresses Plaintiff's central contention – that a dispute of title exists based on the position taken by the USFS that it has discretionary control over the diversions and ditches – in the body of this decision.

[5] The Court takes judicial notice of the ICL litigation and filings, as they are referred to and relied on extensively in the Second Amended Complaint and the parties submissions to make up the basis for the claims, and because they are public records. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (a court may take judicial notice of its own records in other cases); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (matters of public record outside the proceeding such as motions filed in other cases proper subjects of judicial notice). As such, the Court may consider the ICL litigation and filings in deciding this facial motion to dismiss. *DeFiore v. SOC LLC*, 85 F.4th 546, 553 n. 2 (9th Cir. 2023) (holding that for a facial motion, "materials of which a district court may take judicial notice are not considered extrinsic evidence for purposes of Rule[] 12(b)(1)....") (citing *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.")). Further, the parties agreed during the hearing that the Court could properly consider the filings and materials related to the ICL litigation in deciding the motion to dismiss here.

in the 1990's. (Dkt. 37 ¶ 13). The Court there ordered the USFS to engage in formal consultation pursuant to Section 7 of the ESA. *Idaho Conservation League v. United States Forest Serv. (ICL v. USFS)*, Case No. 1:18-cv-00044-BLW, 2019 WL 2505031 (D. Idaho June 17, 2019). The duty to consult under Section 7 of the ESA arises where the federal agency retains "some discretion to influence or change the activity for the benefit of a protected species." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1021-24 (9th Cir. 2012). The parties in the ICL litigation entered into a Stipulation on Remedy to comply with the Court's Order. *ICL v. USFS*, Order at Dkt. 43 (D. Idaho Nov. 19, 2019). In accordance with the Stipulation on Remedy, the USFS issued a Biological Assessment (BA) dated December 28, 2022. (Dkt. 47).[6] The BA discusses the impacts of activities accessing and maintaining diversions and conduits in the action area relative to the ICL litigation, including CLC1, GRG1, and GRG2, and proposes management actions consisting of issuing DBE and SUP with certain terms and conditions as contained in the operation and maintenance plans.[7]

Plaintiff contends that because the USFS is engaging in ESA consultation over his claimed rights-of-way when the Stipulation on Remedy provides that the USFS will not

---

[6] Plaintiff's supplement cites the internet location of the BA: https://www.fs.usda.gov/detail/sawtooth/?cid=FSEPRD1084019. (Dkt. 47). The Court takes judicial notice of the BA as it is a public record, and may consider the BA in deciding this facial motion to dismiss for lack of subject matter jurisdiction because it is expressly relied on and incorporated in the Second Amended Complaint. Fed. R. Evid. 201; *Ritchie*, 342 F.3d at 908.

[7] Plaintiff's supplement refers to the Cleveland Creek (CLC1) and Warm Creek (WMC1) diversions. (Dkt. 47). Plaintiff's claimed rights-of-way in this case relate only to the CLC1, GRG1, and GRG2 diversions. The WMC1 diversion is at issue in a separate case. *See Mizer v. United States*, Case No. 4:20-cv-00324-DKG. The Court notes this only for purposes of ensuring the record is clear. It does not affect the substance of the decision stated herein.

engage in ESA consultation if a diversion is located within a right-of-way over which it lacks discretionary control, a disputed title exists. (Dkt. 37 ¶¶ 24, 26-27). Plaintiff maintains his pre-FLPMA rights-of-way are not subject to USFS discretion or control and, therefore, by engaging in ESA consultation the USFS disputes his claims of title. (Dkt. 37 ¶¶ 6, 28, 29, 54); (Dkt. 43). The United States does not contest that the USFS is engaged in ESA consultation of the rights-of-way at issue in this litigation. (Dkt. 40 at 10-11). Instead, Defendant argues the ESA consultation concerns only the DBE applications relevant to those rights-of-way and, therefore, does not establish that the USFS has taken any position regarding Plaintiff's claimed pre-FLPMA rights-of-way – thus, no disputed title has been shown. (Dkt. 40, 44).

Having carefully reviewed the Second Amended Complaint and parties arguments, the Court finds the allegations, if true, could establish a dispute of title for purposes of this facial motion to dismiss for lack of subject matter jurisdiction.[8] The Stipulation on Remedy excludes from the ESA consultation requirement, any rights-of-way over which the USFS lacks discretionary involvement or control. *ICL v. USFS*, Stipulation on Remedy at Dkt. 43 (D. Idaho Nov. 19, 2019). Importantly, that exclusion is not limited to the pending DBE applications, contrary to Defendant's argument here. *Id.* at 4-5 (excluding ESA consultation for any water facilities that are determined to be entirely

---

[8] In so finding, the Court makes no determination concerning whether the USFS has in fact disputed title, has discretion and control over the claimed rights-of-way, has exercised discretionary control, or has violated any property rights Plaintiff may hold in the rights-of-way. Nor does the Court find that Plaintiff has the property rights that he claims. Those factual determinations go to the merits of the claims, which must be resolved in a later motion.

within a right-of-way on federal land held pursuant to the 1866 Act <u>or other legal</u> <u>authority</u>, over which the USFS lacks discretionary involvement or control). Thus, the allegations that the USFS engaged in ESA consultation and issued a BA proposing management actions for the rights-of-way at issue could demonstrate that the USFS determined, at least implicitly, that it has discretion and control over the rights-of-way, including pre-FLPMA rights-of-way, contrary to Plaintiff's claimed property rights.[9] Plaintiff has therefore alleged facts of a dispute of title for purposes of this facial motion to dismiss. Whether Plaintiff can prove a disputed title in fact exists and prove the other elements of his claims, are matters that must be resolved in a later motion. For these reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction will be denied.

### 2.   Motion to Dismiss Rule 12(b)(6) – Failure to State a Claim

On this motion, Defendant argues Claims One, Two, and Three fail to state plausible claims for relief. (Dkt. 40). The claims allege that Plaintiff possesses rights-of-way to access and use the CLC1, GRG1, and GRG2 diversions and the related ditches

---

[9] The Stipulated Remedy and BA make this case distinct from the decisions in *Owyhee Cnty. v. United States*, 2022 WL 1591895 (D. Idaho May 19, 2022) and *Owyhee Cnty. v. United States*, 2024 WL 517895 (D. Idaho Feb. 9, 2024). There the Court found the BLM's exercise of management authority over the claimed rights-of-way until validated, alone, failed to show a disputed title as to the majority of the roads at issue because the BLM had not taken a position on the rights-of-way. Here, the allegations relevant to the Stipulated Remedy and BA are sufficient to demonstrate the existence of a disputed title for purposes of this motion, because they show the USFS may have taken a position adverse to Plaintiff's claimed property rights by engaging in ESA consultation and proposing management actions over the rights-of-way.

located on federal land for the purpose of conveying water to Plaintiff's property under the Homestead Act, the 1891 Act, and the 1866 Act/RS 2339. (Dkt. 37).

## A.  Claim One – Homestead Act

Plaintiff is the current owner of land obtained by his predecessors in interest by virtue of land patents issued under the Homestead Act. (Dkt. 37 ¶¶ 33-44). "[T]he Homestead Act of 1862…granted 160 acres of [unappropriated public] land to individuals who agreed to live on and make improvements to the land for five years…." *United States v. Jenks*, 129 F.3d 1348, 1354 (10th Cir. 1997) (citing Act of May 20, 1862, ch. 75, 12 Stat. 392 (codified at 43 U.S.C. §§ 161–284) (repealed 1976)).

Claim One alleges the Homestead Act land patents issued to Plaintiff's predecessors in interest expressly conveyed title to the land together with all appurtenances thereof that existed by virtue of state law at the time of conveyance, which Plaintiff argues included the rights-of-way claimed here. (Dkt. 37 ¶¶ 37, 38, 43, 44, 55-60); (Dkt. 43 at 6-10).[10] On this motion, Defendant argues Claim One fails to state a

---

[10] Plaintiff's brief refers to the Desert Land Act of 1877, 43 U.S.C. § 321, and the Carey Act, 43 U.S.C. § 641. (Dkt. 43 at 7-10, 12, 14). Neither statute applies to Plaintiff's claims in this case and, for that reason, are not discussed herein. (Dkt. 37). The land patents in this case were issued under the Homestead Act, not the Desert Land Act; and the Carey Act concerns land grants to states, not individuals. The references to the Desert Land Act and the certain docket citations appear to be carry-over from briefing filed in separate cases – *Humphreys Family Limited Partnership, et al. v. United States*, Case No. 4:21-cv-00109-DKG and *White Cloud Ranch, LLC, et al. v. United States*, Case No. 4:21-cv-00110-DKG. This discrepancy is noted here to ensure the record is clear. While initially confusing and distracting, the mistaken references and citations were not considered by the Court in evaluating the substance and merits of the parties' arguments or in deciding the motion. The Court recognizes the general concept asserted by Plaintiff – that the land patent statutes and the Carey Act were enacted to encourage irrigation and settlement of the desert lands in the West. Nevertheless, the allegations that the land patents conveyed easements for the diversions and ditches fail to state a claim for the reasons stated herein.

claim because state law cannot grant rights in federal land, and because the Homestead Act does not implicitly create rights-of-way. (Dkt. 40, 44). For the reasons discussed below, the Court finds Plaintiff has failed to state a plausible claim.

Plaintiff owns land irrigated by the diversions and ditches that are the subject of this lawsuit. The land upon which the diversions and ditches are located is federal land. The federal land was reserved in 1906, prior to the time Plaintiff's predecessors entered their land parcels and prior to construction of the ditches and diversions, and it remains federal land to this day.[11] As such, only Congress has the authority to dispose of the property owned by the United States. U.S. Const., Art. IV, § 3, cl. 2 ("Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). "Courts normally construe federal land grants narrowly, under a longstanding 'rule that unless the language in a land grant is clear and explicit, the grant will be construed to favor the [granting] government so that nothing passes by implication.'" *Lyon v. Gila River Indian Community*, 626 F.3d 1059, 1072 (9th Cir. 2010) (quoting *Fitzgerald Living Trust*, 460 F.3d 1259, 1265 (9th Cir. 2006); and citing *McFarland v. Kempthorne*, 545 F.3d 1106, 1112 (9th Cir. 2008)).

---

[11] The diversions and ditches at issue here are located on land reserved since 1906, when the Sawtooth National Forest was created, and Plaintiff does not allege otherwise. U.S. STATUTES AT LARGE, 59 Proclamation, Nov. 6, 1906, 34 Stat. 3260. Plaintiff's predecessors in interest entered their lands in 1907 and 1913, and, thereafter, constructed the diversions and ditches across the reserved National Forest land to divert water to their land parcels. (Dkt. 37 ¶¶ 34-41). The Homestead Act patents for the land parcels now owned by Plaintiff were all issued in 1914. (Dkt. 37 ¶¶ 33, 38, 43).

State law cannot create an easement or rights-of-way on federal land. *McFarland*, 545 F.3d at 1111 (citing *Superior Oil Co. v. United States*, 353 F.2d 34, 37 n. 4 (9th Cir. 1965) ("Federal law governs a claim of easement over lands owned by the United States."); *Utah Power & Light Co. v. United States*, 243 U.S. 389, 403-04 (1917) (rejecting the assertion that lands of the United States are subject to the jurisdiction, powers, and laws of the state in which they are located and holding that rights in federal lands can only be conveyed through acts of Congress). Likewise, any water rights held by Plaintiff do not confer an easement across federal land for the ditches. *Utah Power & Light Co.*, 243 U.S. at 411 (noting rights-of-way through lands of the United States is a different matter from water rights); *Baker Ranches*, 625 F.Supp.3d 1100-01 (observing the "well-established principle" that "the right to convey water is distinguishable from the right to use water," in a case involving the 1866 Act); *Pine River Irr. Dist. v. United States*, 656 F.Supp.2d 1298, 1304 n. 7 (D. Colo. 2009). Thus, no easements or rights-of-way were created by virtue of Idaho law that were conveyed as appurtenances with the land patents. Plaintiff's contentions of easements to the diversions and ditches on reserved federal land based on Idaho laws and customs prior to the issuance of the land patents, therefore, fails to state a claim as a matter of law. (Dkt. 37, 43). Consequently, no easements existed that could have been passed as appurtenances when the land patents were issued.

Further, a Homestead Act land patent may grant an existing easement as an appurtenance thereof, but it cannot create an easement. *McFarland*, 545 F.3d at 1111 (citing *Jenks*, 129 F.3d at 1355 ("[U]nless an easement existed at the time of the grant,

McFarland holds no easement."); *Fitzgerald Living Trust*, 460 U.S. at 1267 ("While the word 'appurtenance' will carry with it an existing easement, it will not create the easement."). Thus, the "appurtenance thereof" language of the land patents issued to Plaintiff's predecessors in interest did not create or convey easements that were not established at the time of conveyance. As discussed above, state law cannot create an easement on federal land. Therefore, the easements that Plaintiff alleges arose under state law for the diversions and ditches, did not exist as a matter of law. Thus, no easements appurtenant to the land were conveyed with the Homestead Act patents.

Plaintiff's further assertion that the United States knew the diversions and ditches existed when it granted the land patents does not establish a plausible claim of property rights in the diversions and ditches. (Dkt. 43 at 7-9). Nor does the existence of the diversions and ditches at the time the land patents were issued, alone, evidence a vested easements or rights-of-way. The "Homestead Act did not grant settlers a vested property right of access over public lands to their homesteads" and "Congress did not imply an easement over public lands into the 1862 Homestead Act." *Fitzgerald Living Trust*, 460 F.3d at 1265. "In a public grant nothing passes by implication, and unless the grant is explicit with regard to the property conveyed, a construction will be adopted which favors the sovereign." *McFarland*, 545 F.3d at 1112 (quoting *Albrecht v. United States*, 831 F.2d 196, 198 (10th Cir. 1987)).[12] Thus, allegations that the United States knew the

---

[12] Plaintiff claims to have obtained "express" easements, arguing the easements existed by virtue of Idaho law prior to the issuance of the land patents and, therefore, the easements were expressly conveyed by the "appurtenance thereof" language of the land patents. (Dkt. 43 at 6-10). Indeed, Plaintiff refutes assertions that his easements arose by implication. (Dkt. 43 at 7).

diversions and ditches existed prior to and at the time the land patents were issued under the Homestead Act, even if true, fail to state a claim. Rather, there are other federal statutes that provide processes for obtaining easements, rights-of-way, and rights of access on federal lands. *See e.g.*, 43 U.S.C. § 661; 43 U.S.C. § 946; 43 U.S.C. § 1761. The federal statutes relevant to Claims Two and Three are addressed below.

For the reasons stated above, the Court finds Plaintiff has failed to state a plausible claim to quiet title in the diversions and ditches based on the Homestead Act. Accordingly, Defendant's motion to dismiss will be granted as to Claim One. The dismissal will be with prejudice, as Plaintiff has not identified any facts he could allege that would support his claim of vested rights-of-way arising under the Homestead Act.

## B.  Claim Two – 1891 Act

The 1891 Act provided grants of rights-of-way through public lands and reservations of the United States to ditches and canals used for irrigation or drainage purposes. 43 U.S.C. §§ 946-948; *Kern River Co. v. United States*, 257 U.S. 147, 151 (1921).

On this motion, Defendant argues Plaintiff has failed to state a claim quieting title to the diversions and ditches under the 1891 Act because the Second Amended Complaint does not allege Plaintiff's predecessors submitted proper applications for the

---

Nevertheless, Plaintiff's allegations and arguments suggest the possibility of an implied easement – e.g., because the United States knew the ditches existed when they issued the patent, the rights-of-way were included as appurtenances to the land patents, if not explicitly at least by implication. (Dkt. 37 ¶ 58) (Claim One alleging rights-of-way by "patent deeds conveying title, including any and all appurtenances, whether expressly stated or otherwise.") (emphasis added). The Court has addressed all of Plaintiff's claims and arguments raised accordingly.

claimed rights-of-way, and does not allege they sought or obtained the approval of the Secretary of the Interior or the United States Department of Agriculture. (Dkt. 40 at 15-17). Plaintiff disputes that an application and approval are required to obtain rights-of-way under the 1891 Act, and argue the agency regulations cannot override or conflict with the language of the statute. (Dkt. 43 at 11-16).

Instead, Plaintiff asserts that the unambiguous language of the statute allows individuals to submit maps to the Department of Interior and does not require Secretarial approval, in contrast to the requirements for a ditch company, pointing to the following language in Section 948:

> "If such ditch, canal, or reservoir has been or shall be constructed by an individual or association of individuals, <u>it shall be sufficient for such individual or association of individuals to file with the Secretary of the Interior, and with the officer, as the Secretary of the Interior may designate, of the land office where said land is located, a map of the line of such canal, ditch, or reservoir</u>…."

(Dkt. 43 at 12); 43 U.S.C. § 948 (emphasis added). Plaintiff maintains his predecessors complied with the 1891 Act by filing maps to the government land office with their land patent applications, and that the USFS was aware the diversions and ditches existed and were being used to irrigate his predecessors' lands. (Dkt. 37 ¶¶ 62-63); (Dkt. 43 at 11-16).[13] Further, Plaintiff contends that his claimed rights-of-way vested upon construction. (Dkt. 43 at 14-16).

---

[13] As with Claim One, Claim Two alleges the USFS knew the diversions and ditches had been constructed and were in use at the time the Homestead Act patents were granted as a basis for finding rights-of-way under the 1891 Act. (Dkt. 37 ¶ 62); (Dkt. 43 at 14) (arguing the inspection of the ditches and approval of the land patents satisfied the requirements of the 1891 Act). However, Plaintiff does not allege that the land patents here expressly conveyed rights-of-way to the diversions

Each of Plaintiff's arguments have been squarely rejected by other courts. *See Baker Ranches*, 625 F.Supp.3d at 1108-1112; *Pine River*, 656 F.Supp.2d at 1312-21. While *Baker Ranches* and *Pine River* are not binding, this Court finds the reasoning of the decisions instructive and consistent with the Court's own analysis.

Obtaining rights-of-way under the 1891 Act required the submission of certain materials and approval of the Secretary of the Interior and/or the Department of Government having jurisdiction of any such reservation. 43 U.S.C. §§ 946-948; *Baker Ranches*, 625 F.Supp.3d at 1108-11; *Pine River*, 656 F.Supp.2d at 1313-21. The plain language of the 1891 Act conditioned grants of rights-of-ways on the submission of certain materials and approval by the Government, stating: "all maps of location shall be subject to the approval of the department of the Government having jurisdiction of such reservation…." 43 U.S.C. § 946. The filing and approval requirements for obtaining 1891 Act rights-of-way, applied to individuals as well as entitles:

> The provisions of sections 946 to 949 of this title shall apply to <u>all</u> canals, ditches, or reservoirs, heretofore or hereafter constructed, <u>whether constructed by corporations, individuals, or association of individuals</u>, on the filing of the certificates and maps therein provided for.

43 U.S.C. § 948 (emphasis added). The Department of the Interior regulations are in accord with the statute, requiring application and approval of rights-of-way through

---

and ditches at issue in this matter, aside from asserting the rights-of-way were included as "appurtenances thereof." (Dkt. 37). Again, conveyances of public lands must be explicit, nothing passes by implication; and federal rights-of-way statutes are strictly construed in favor of the United States. *Caldwell v. United States*, 250 U.S. 14, 20-21 (1919). Thus, allegations that the USFS knew the diversions and ditches existed and were in use at the time the United States granted the land patents, even if true, do not state a plausible claim of rights-of-way under the 1891 Act.

federal lands. 36 Interior Dec. 567 (1908). Critically here, approval by the Secretary of

the Interior is required for 1891 Act rights-of-way to be vested. *Kern River Co.*, 257 U.S.

at 151 ( 1891 Act "rights of way were to be obtained by making application at the local

land office and ultimately securing the approval by the Secretary of the Interior of a map

of the ditch, canal or reservoir…The grant was to become effective when the approval

was given"); *Western Watersheds Proj. v. Matejko*, 468 F.3d 1099, 1103 (9th Cir. 2006)

("[T]he Act of [1891], provided for a vested federal right-of-way for irrigation upon

approval of a map by the Secretary of the Interior.") (citing *Utah Power & Light Co.*, 243

U.S. at 406-07); *Baker Ranches*, 625 F.Supp.3d at 1109-1111; *Pine River*, 656 F.Supp.2d

at 1313-1321. Further, the rational underlying the vesting by construction theory asserted

by Plaintiff has likewise been rejected. *Baker Ranches*, 625 F.Supp.3d at 1109-1111;

*Pine River*, 656 F.Supp.2d at 1316-1321.

      Applying the reasoning stated above and having carefully reviewed the pleading

and Plaintiff's arguments, the Court finds Plaintiff has failed to state a quiet title claim to

the rights-of-way under the 1891 Act. Assuming for purposes of this motion that

submitting maps with the land patent applications was sufficient, which is not a given, the

Second Amended Complaint contains no allegations that the maps submitted by

Plaintiff's predecessors were approved as 1891 Act rights-of-way by the Secretary of the

Interior or the department of the Government having jurisdiction. 43 U.S.C. § 946.

      Instead, the Second Amended Complaint alleges that at the time the Homestead

Act land patents were granted, the USFS was aware the diversions and ditches had been

constructed and were carrying water, and that the diversions and ditches received 1891

Act rights-of-way upon their completion. (Dkt. 37 at ¶¶ 62, 63). Neither granting of the Homestead Act land patent applications nor the USFS' awareness of the diversions and ditches constitutes the approval required under the 1891 Act. Again, grants of public lands must be explicit and are strictly construed in favor of the United States. *Baker Ranches*, 625 F.Supp.3d at 1111 (citing *Caldwell*, 250 U.S. at 20-21 and discussing *Pine River*, *supra*). The Homestead Act did not create easements or rights-of-way and Plaintiff has not alleged facts showing the land patents here included rights-of-way to the diversions and ditches, for the reasons discussed above in Claim One. Further, vesting by completion does not establish rights-of-way under the 1891 Act. *Baker Ranches*, 625 F.Supp.3d at 1109-1111; *Pine River*, 656 F.Supp.2d at 1316-1321. For these reasons, the Court finds the allegations in the Second Amended Complaint, even if true, fail to state a plausible claim to quiet title to the claimed rights-of-way under the 1891 Act.

Further, Plaintiff is unable to allege facts that would cure the pleading. During the hearing, Plaintiff's counsel conceded that no approval from either the Secretary of the Interior or the Department of Agriculture had been obtained for the rights-of-way claimed under the 1891 Act. Therefore, no facts appear to exist which Plaintiff could allege that would plausibly state a claim for rights-of-way under the 1891 Act. Accordingly, Claim Two will be dismissed with prejudice.

### C.  Claim Three – 1866 Act/RS 2339

The 1866 Act/RS 2339 provided federal protection to water rights and to rights-of-way for the construction of water conveyances on unreserved public land that were established pursuant to state and local law and custom. *Baker Ranches*, 625 F.Supp.3d at

1103-05 (citing 43 U.S.C. § 661; *Utah Power & Light Co.*, 243 U.S. at 402; *Jennison v. Kirk*, 98 U.S. 453, 456-60 (1878)).[14] The language of the statute provided, in pertinent part, as follows:

> Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed;….
>
> All patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by this section.

43 U.S.C. § 661 (repealed in part Oct. 21, 1976). To establish rights-of-way for irrigation ditches under the 1866 Act/RS 2339, Plaintiff must prove: 1) his predecessors in interest possessed vested and accrued rights to the use of water recognized by local custom or law, and 2) the ditches were constructed and completed on unreserved public lands. *Bear Lake & River Waterworks & Irrigation Co. v. Garland*, 164 U.S. 1, 16-19 (1896). The Second Amended Complaint here fails to state facts that establish the second element. (Dkt. 37).

As noted above, the land upon which the diversions and ditches are located was removed from the public domain in 1906, with the creation of the Sawtooth National

---

[14] In contrast to the 1891 Act relevant to Claim Two which grants rights-of-way over <u>reserved</u> federal lands, the 1866 Act/RS 2339 raised in Claim Three grants rights-of-way over <u>unreserved</u> federal lands. *Compare* 43 U.S.C. § 661 with 43 U.S.C. § 946; *Baker Ranches*, 625 F.Supp.3d at 1099 ("The 1866 Act recognized water rights and rights-of-way only on public lands – not on lands reserved or withdrawn from the public domain.").

Forest. U.S. STATUTES AT LARGE, 59 Proclamation, Nov. 6, 1906, 34 Stat. 3260. All of the facts relevant to establishing the second element are alleged to have occurred after the land was reserved in 1906: Plaintiff's predecessors in interest entered their lands in 1907 and 1913; the ditches at issue were constructed in 1909 or 1913; the land patents were issued in 1914; and the water rights vested in 1916. (Dkt. 37 ¶¶ 33-41, 43, 44, 45, 67). Assuming the facts alleged in the Second Amended Complaint are true and construing all inferences in favor of Plaintiff, the facts alleged fail to establish a plausible claim under the 1866 Act/RS 2339, because they do not demonstrate that the ditches were constructed and completed on unreserved public lands. (Dkt. 37).

Plaintiff does not dispute that the land was reserved in 1906. Instead, Plaintiff contends the ditches were constructed during the time the area in question was reopened to settlement in 1913, subsequent to the initial 1906 proclamation creating the Sawtooth National Forest. (Dkt. 43 at 16); (Dkt. 37 ¶ 67). The Second Amended Complaint alleges:

> On April 14, 1913, the acting Secretary of the Department of Agriculture requested that the lands in T9N R14E, Section 6, SE¼ NW¼ and lots 3, 4, 5 [; and T9N R14E, Section 6, E½ SW¼, W½ SE¼] be opened to settlement and entry in accordance with the Act of June 11, 1906 (34 Stat. 233). Lands open for settlement under the Act of June 11, 1906 were lands chiefly valuable for agriculture.

(Dkt. 37 ¶¶ 37, 42). The reopening of the lands for settlement is further evidenced, Plaintiff argues, by the fact that Homestead Act patents could not be issued on reserved Forest Service lands and the land patents here were issued in 1914. (Dkt. 43 at 16). Defendant responds that the land alleged to have been reopened for settlement are where Plaintiff's property is located, not where the diversions and ditches to which Plaintiff

MEMORANDUM DECISION AND ORDER – 23

claims rights-of-way are located. (Dkt. 44 at 10) (comparing Paragraphs 35, 45, 47 and Exhibit A of the Second Amended Complaint).

Plaintiff owns real property located in T9N R14E, SE1/4 NW1/4 and lots 3, 4, and 5 in Section 6 (Frank Niece Parcel) and T9N R14E E1/2 SW1/4 W1/2 SE1/4 in Section 6 (Leslie Niece Parcel). (Dkt. 37 ¶¶ 1, 33, 35, 38, 41, 43, 44). The allegations in the Second Amended Complaint that land was reopened for settlement after 1906 and that the land patents were issued thereafter, are expressly limited to the lands currently owned by Plaintiff – the Frank Niece Parcel and the Leslie Niece Parcel. (Dkt. 37 ¶¶ 37, 38, 42, 43). There are no allegations that the federal land upon which Plaintiff claims to possess rights-of-way was reopened for settlement.

Rather, the claims raised in this litigation concern alleged rights-of-way to diversions and ditches located on land owned by the United States in T9N R14E, Section 6 and T10N R14E, Section 31, not on Plaintiff's land. (Dkt. 37 at ¶ 2). The diversions – CLC1, GRG1, and GRG2 – are located in T10N R14E, Section 31. (Dkt. 37 ¶¶ 45, 47 and Ex. A). The ditches are located in T10 R14E, Section 31 and in T9N R14E, Section 6. (Dkt. 37, Ex. A). Thus, the allegations that the land now owned by Plaintiff, and only that land, was reopened for settlement, fails to establishing a plausible claim under the 1866 Act/RS 2339, as there are no facts alleged that show the land containing the diversions and ditches at issue was unreserved or reopened for settlement. Thus, Plaintiff has not alleged facts showing the diversions and ditches at issue were constructed and completed on unreserved public land. Accordingly, the Court will grant Defendant's Motion to Dismiss as to Claim Three.

## <u>ORDER</u>

THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. 40) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. The Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is **DENIED**.

2. The Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**. Claims One, Two and Three are **DISMISSED WITH PREJUDICE** and without leave to amend.[15]

DATED: May 20, 2024

Honorable Debora K. Grasham
United States Magistrate Judge

---

[15] Plaintiff has not requested nor articulated any basis for allowing leave to amend. (Dkt. 43). Nevertheless, the Court has considered whether amendment is warranted and finds it would be futile. *Unified Data Servs., LLC v. Fed. Trade Commission*, 39 F.4th 1200, 1208 (9th Cir. 2022) ("[L]eave to amend should be given, even sua sponte, if amendment could cure a pleading defect."). The premises underlying Plaintiff's claimed rights-of-way are contrary to the statutes upon which the claims are based, such that it does not appear they can be cured by further amendment.